IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| JIE QIN,<br><br>Plaintiff,<br><br>v.<br><br>THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS ON SCHEDULE "A"<br><br>Defendants. | Case No. 6:21-cv-1243-ADA<br><br>JURY TRIAL DEMANDED |

## **PRELIMINARY INJUNCTION INCLUDING A TEMPORARY ASSET RESTRAINT AND EXPEDITED DISCOVERY**

Before the Court is Plaintiff Jie Qin's ("Plaintiff") *Ex Parte* Motion for Entry of a Preliminary Injunction enjoining Defendants Big Hippo LLC and EifBrisa (collectively, "Defendants") from manufacturing, importing, distributing, offering for sale, or selling unauthorized and unlicensed products, namely the automotive seat covers that infringe Plaintiff's patented design, U.S. Patent No. D873,583, and for expedited discovery and asset restraint (the "Motion"). The Court, having considered the Motion, finds that the Motion should be GRANTED.

### I.     BACKGROUND

On November 30, 2021, Plaintiff filed suit in the Waco Division of the Western District of Texas, seeking injunctive relief in the form of an *ex parte* temporary restraining order ("TRO"). After a hearing, the Court signed and entered a Sealed Temporary Restraining Order, including a Temporary Injunction, a Temporary Asset Restraint, Expedited Discovery, and Alternative Service, and subsequently extended its order. (ECF Nos. 6, 8). The Court, in

1

response to Plaintiff's Motion for Preliminary Injunction (ECF No. 19), set a hearing for January 6, 2022. No defendants have appeared in this case.

Plaintiff alleges Defendants are selling unauthorized and unlicensed seat covers for automobiles (the "Accused Products") that infringe U.S. Design Patent No. D873,583 (the "D'583 Patent"). Plaintiff further alleges Defendants are "an interrelated group of infringers working in active concert to knowingly and willfully make, use, offer for sale, sell, and/or import into the United States for subsequent sale or use, products, namely seat cushions, that infringe directly and/or indirectly the D'583 Patent in the same transaction, occurrence, or series of transactions or occurrences." ECF No. 19 at 2. Plaintiff also alleges that Defendants' registration patterns and similar internet stores and products illustrate common tactics employed to evade enforcement efforts, suggesting that Defendants are interrelated. *Id.*

## II.  LEGAL STANDARD

Rule 65 of the Federal Rules of Civil Procedure governs preliminary injunctions. Fed. R. Civ. P. 65. The grant of injunctive relief is an extraordinary remedy which requires the movant to unequivocally show the need for its issuance. *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 288 (5th Cir. 2012); *Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1050 (5th Cir. 1997).

In the Fifth Circuit, the test for whether a preliminary injunction is proper has four parts. The moving party must establish each of the following four factors: (1) a substantial likelihood of success on the merits; (2) a substantial threat that failure to grant the injunction will result in irreparable injury; (3) the threatened injury to the applicant out-weighs the threatened harm to the party sought to be enjoined; and (4) granting the injunction will not disserve the public interest. *See Google, Inc. v. Hood*, 822 F.3d 212, 220 (5th Cir. 2016); *See also Tinnus Enters., LLC v.*

*Telebrands Corp.*, 846 F.3d 1190, 1202 (Fed. Cir. 2017) (applying the law of the regional circuit).

No particular factor is dispositive, but rather the Court must weigh each factor against the others and against the form and magnitude of the relief requested. *Monsanto Co. v. McFarling*, 308 F.3d 1291, 1297 (Fed. Cir. 2002). A strong showing on one factor can compensate for a less strong position on another. *Chrysler Motors Corp. v. Auto Body Panels of Ohio, Inc.*, 908 F.2d 951, 953 (Fed. Cir. 1990). "However, no matter how severe and irreparable the threatened harm and irrespective of the hardships in which a preliminary injunction or lack of one might cause the parties, 'the injunction should never issue if there is no chance that the movant will eventually prevail on the merits.'" *Monumental Task Comm., Inc. v. Foxx*, 157 F. Supp. 3d 573, 585 (E.D. La. 2016)  (citing *Texas v. Seatrain Int'l, S.A.*, 518 F.2d 175, 180 (5th Cir. 1975)).

### III.   ANALYSIS

The Court considers whether Plaintiff can satisfy each of the elements necessary for preliminary injunctive relief as follows.

#### A.   Substantial Likelihood of Success

To demonstrate a likelihood of success on the merits, Plaintiff must show that it will likely prove infringement of the D'583 Patent and likely withstand any invalidity challenges. *See Metalcraft of Mayville, Inc. v. The Toro Co.*, 848 F.3d 1358, 1364 (Fed. Cir. 2017). The burden of proof as to infringement falls on the patentee. *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 672 (Fed. Cir. 2008). An analysis of the D'583 Patent and the Accused Products indicate that the allegedly infringing seat cushions are exact copies of Plaintiff's patented design. Specifically, the layout, cutouts, dimensions, and stitching appear to be exact duplicates and an ordinary observer would believe the Accused Products are the same as the patented design. *Id.* at

682 (the test for design patent infringement is whether an ordinary observer would be deceived into thinking that the accused designs are the same as the patented design). *See also* Exhibits A-1 to A-6 of the Complaint (ECF Nos. 3-1 through 3-7). Furthermore, this Court granted a TRO for the Accused Products of Defendants Big Hippo LLC and EifBrisa, while denying the TRO for other defendants whose products contained different stitching designs and cutouts. The same observation and analysis applies here.

The Court also finds that the D'583 Patent was duly issued by the U.S. Patent and Trademark Office ("USPTO") on January 28, 2020 and is therefore presumed valid under 35 U.S.C. § 282. This presumption of validity applies equally "during preliminary injunction proceedings as at other stages of litigation." *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1377 (Fed. Cir. 2009). The D'583 Patent has not yet been subject to any invalidity challenges worthy of denying this preliminary injunction. *Id.* at 1379 (an alleged infringer who asserts that a patent is invalid must show that it is more likely than not that it can prove invalidity at trial by clear and convincing evidence). Here, no defendants have appeared, and no invalidity challenges are before the Court. The Court therefore relies on the function of the USPTO to presume it properly performed its function in reviewing the patent before issuing it. *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1304 (Fed. Cir. 2008).

Ultimately, because Plaintiff has demonstrated that "success in establishing infringement is 'more likely than not,'" without any substantial question as to the validity of the D'583 Patent, this factor supports the issuance of a preliminary injunction. *Trebo Mfg., Inc. v. Firefly Equip., LLC*, 748 F.3d 1159, 1166 (Fed. Cir. 2014) (quoting *Revision Military, Inc. v. Balboa Mfg. Co.*, 700 F.3d 524, 525–26 (Fed. Cir. 2012)).

**B.     Irreparable Harm**

Irreparable harm resulting from design patent infringement is demonstrated when the "remedies available at law, such as monetary damages, are inadequate to compensate for that injury." *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1148 (Fed. Cir. 2011). Plaintiff must show that irreparable harm is likely. *See Luminara Worldwide, LLC v. Liown Elecs. Co. Ltd.*, 814 F.3d 1343, 1352 (Fed. Cir. 2016). Last, Plaintiff must show a causal nexus exists between the alleged infringement and the irreparable harms. *Apple Inc. v. Samsung Elecs. Co.*, 735 F.3d 1352, 1364 (Fed. Cir. 2013).

Plaintiff complains of two forms of irreparable harm: (1) loss of customers' goodwill and (2) reputational harm. ECF No. 19 at 6; Qin Decl. at ¶¶ 13-18. Independently, each of these harms may constitute irreparable harm and offer a basis on which preliminary injunctive relief should issue. *See Aria Diagnostics, Inc. . Sequenom, Inc.*, 726 F.3d 1296, 1304 (Fed. Cir. 2013) ("Under [Federal Circuit] precedent, price erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm.") (internal quotes and citations omitted).

Given the identical nature of the D'583 Patent and Accused Products, Defendants' selling of the Accused Products is likely to cause consumer confusion with Plaintiff's genuine patented products, causing a loss in customers' goodwill and harm to Plaintiff's reputation. *Reebok Int'l Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1558 (Fed. Cir. 1994) ("Harm to reputation resulting from confusion between an inferior accused product and a patentee's superior product is a type of harm that is often not fully compensable by money because the damages caused are speculative and difficult to measure.").

Plaintiff also points to the causal nexus between the alleged infringement and the irreparable harm—that Defendants' use of the D'583 Patent in the Accused Product is "a substantial, if not the exclusive, reason for consumer demand of the [Accused Products] given the fact that the products are relatively simple." ECF No. 19 at 7; *see also PCT Int'l Inc. v. Holland Elecs. LLC*, No. CV-12-01797-PHX-JAT, 2015 WL 5210628, at *23–24 (D. Ariz. Sept. 8, 2015, *aff'd*, No. 2016-1061, 2016 WL 4373941 (Fed. Cir. Aug. 16, 2016) ("The Federal Circuit has explained that when the products at issue are 'relatively simple,' in the sense that they have a small number of features, the causal nexus requirement is easier to satisfy because the infringing feature has a large impact on demand for the products.").

Last, Plaintiff raises its concern that Defendants are foreign individuals and entities that reside in foreign jurisdictions with no presence in the United States, making any attempt to collect a monetary judgment unlikely. ECF No. 19 at 7. This Court, along with countless others, agrees. *See Bosch*, 659 F.3d at 1156 (reversing denial of permanent injunction where the likely availability of monetary damages was in question, citing *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, No. 2:04-cv-0032, 2007 WL 869576, at *2 (E.D. Tex. Mar. 21, 2007), where "'all three defendants are foreign corporations and that there is little assurance that [plaintiff] could collect monetary damages'"); *Aevoe Corp. v. AE Tech Co., Ltd.*, No. 2:12-cv-0053, 2012 WL 760692, at *5 (D. Nev. Mar. 7, 2012) ("[A] finding of irreparable harm was not clearly erroneous because it also found that since AE Tech is a foreign corporation, money damages would be insufficient."); *Bushnell, Inc. v. Brunton Co.*, 673 F. Supp. 2d 1241, 1263 (D. Kan. 2009) ("the prospect of collecting money damages from a foreign defendant with few to no assets in the United States tips in favor of a finding of irreparable harm"); *Nike, Inc. v. Fujian Bestwinn (China) Indus. Co.*, 166 F. Supp. 3d 1177, 1179 (D. Nev. 2016) ("[B]ecause Bestwinn

6

has no presence in the United States, it may be difficult or impossible for NIKE to recover a money judgment against Bestwinn").

In sum, Plaintiff has been irreparably harmed and will continue to be harmed absent a preliminary injunction. This factor weighs in favor of granting the preliminary injunction.

### C.  Balance of Hardships

The Court concludes that this factor weighs in favor of Plaintiff. In similar circumstances, courts have refused to assign any "harm" to an infringing defendant because it assumed the risk. *See Celsis in Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 992, 931 (Fed. Cir. 2012) ("the preliminary record suggests that LTC's losses were the result of its own calculated risk in selling a product with knowledge of Celsis' patent"); *Broadcom Corp. v. Qualcomm, Inc.*, 543 F.3d 683, 704 (Fed. Cir. 2008) (citing *Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1003 n.12 (Fed. Cir. 1986)) ("[o]ne who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected").

After expending considerable time and resources to acquire the D'583 Patent, manufacture, design, and sell its own products that embody the D'583 patent, establish an online market for its products, and promote goodwill under the DINKANUR brand name, Plaintiff's efforts should not be disrupted by Defendants continued infringement. Accordingly, the Court finds that the balance of hardships prong favors a preliminary injunction.

### D.  Public Interest

Plaintiff argues that a preliminary injunction serves the public interest because it ensures protection of its patent rights. ECF No. 19 at 9–10. The Court agrees and finds that permitting any continued infringement would continue to hurt the public interest, creating confusion and false impressions of licensing or permission to use the D'583 Patent. Ultimately, the public

interest favors enforcement of patent rights. *Celsis In Vitro*, 664 F.3d at 931. *See also Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1383 (Fed. Cir. 2006) ("We have long acknowledged the importance of the patent system in encouraging innovation."). The incentive to research and develop new products "would be adversely affected by taking market benefits away from the patentee and giving them to the accused infringer." *Celsis In Vitro*, 664 F.3d at 932. *See also Smith v. Intern., Inc. v. Hughes Tool Co.*, 718 F.2d 1573, 1578 (Fed. Cir. 1983) ("Without the right to obtain an injunction, the right to exclude granted to the patentee would have only a fraction of the value it was intended to have, and would no longer be as great an incentive to engage in the toils of scientific and technological research.").

This Court, as noted above, found that Plaintiff has shown a likelihood of success in proving infringement and no substantial question as to the validity of the D'583 Patent exists. Consequently, the Court finds that the public interest is best served by protecting Plaintiff's patent rights and allowing it to exercise its right to exclude. *See MGM Well Srvs.*, 505 F. Supp. 2d at 379–80 ("The public interest is best served by protecting patent rights and enforcing the applicable laws."). Accordingly, the Court finds all four factors favor Plaintiff's request for the issuance of a preliminary injunction.

### E.     Bond

Under the Federal Rules, "[t]he court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined." Fed. R. Civ. P. 65(c). Accordingly, the Court ORDERS that Plaintiff's bond in the amount of one-thousand U.S. dollars per defendant ($1,000 per defendant, collectively a total of $2,000) shall remain as previously tendered by Plaintiff for the TROs. Fed. R. Civ. P. 65(c); *Phillips v. Charles*

*Schreiner Bank*, 894 F.2d 127, 131 (5th Cir. 1990). The Court finds that this amount is appropriate to protect Defendants in the event that the injunction is later determined to be in error.

**F.  Injunctive Relief**

The Court, having found a preliminary injunction is warranted, therefore orders as follows:

1. Defendants and their officers, affiliates, agents, and employees are hereby temporarily enjoined from:

   a. manufacturing, importing, distributing, offering for sale, or selling the any accused products, *i.e.*, the accused seat cushions for automobiles and any colorable variations thereof listed on Schedule A to the Complaint that correlate with Defendants (the "Accused Products");

   b. further infringing U.S. Patent No. D873,583 and damaging Plaintiff's patent rights;

   c. otherwise competing unfairly with Plaintiff in any manner;

   d. shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, the Accused Products;

   e. using, linking to, transferring, selling, exercising control over, or otherwise owning the Online Marketplace Accounts or any other online marketplace account that is being used to sell or is the means by which Defendants could continue to sell the Accused Products; and

  f. operating and/or hosting any website or marketplace account for or on behalf of Defendants that are involved with the distribution, marketing, advertising, offering for sale, or sale of the Accused Products.

2. Defendants and their officers, affiliates, agents, and employees and any third parties receiving actual notice of this order—including Amazon.com, and any payment service providers, including any credit card companies, banks, or payment processors such as PayPal—shall, within five business days of receipt of such notice, provide to Plaintiff expedited discovery, including copies of all documents and things currently in their possession, custody, or control related to:

  a. the identities of and all contact information, including any email addresses, related to Defendants, and any entities having any ownership or control over the Amazon.com, marketplace stores operated by Defendants, including Blackpanther (store ID: A36LHKALD98KXJ), West Llama Auto (store ID: A2C3XZZ74ZYC0Z), Big Hippo LLC, EifBrisa, and any other Amazon.com accounts under the operation or control of the individuals operating the foregoing marketplace accounts;

  b. any Amazon.com marketplace accounts owned, operated, or controlled by Defendants and their officers, affiliates, agents, and/or employees;

  c. any and all sales made by the Amazon.com marketplace accounts listed in the table below and any and all marketplace accounts identified in response to 2.a and/or 2.b above;

| Amazon Defendants | Store ID |
|---|---|
| Big Hippo LLC | AH7RXPY89Q2ZY |
| EifBrisa | A1S5YIAE4LCD2P |

    d. any and all financial accounts owned, operated, or controlled by the Defendants and/or their officers, affiliates, agents, and/or employees used in conjunction with the sale and/or offering for sale in conjunction with the Accused Products.

  3. Defendants and any third parties with actual notice shall, within five business days after receipt of such notice disable any and all accounts and or services used by Defendants to market, advertise, sell and/or offer for sale any goods in conjunction with the Accused Products.

  4. Defendants and their officers, affiliates, agents, and employees shall be temporarily restrained and enjoined from transferring or disposing of any monies or assets until further ordered by this Court.

  5. Any entities with actual notice of this order, including Amazon.com or any banks, credit card companies, or payment processing companies such as PayPal, shall, within two business days of receipt of this order, identify any and all accounts and/or funds associated with the marketplace accounts identified in the chart above, or in response to 2.a and/or 2.b above, restrain and enjoin any accounts and/or funds from being transferred or disposed of until further ordered by this Court, including allowing the transfer of any accounts and/or funds internationally, and provide to Plaintiff information sufficient to show the amounts restrained.

  6. Plaintiff may provide notice of these proceedings via electronic mail to any e-mail addresses provided for Defendants by third parties.  The combination of providing notice via electronic publication and e-mail, along with any notice that Defendants receive from any online marketplaces or payment processors shall constitute notice reasonably calculated under all circumstances to appraise Defendants of the pendency of this action and afford them the

opportunity to present their objections.

      7.     That Plaintiff shall maintain a bond with the Court of two thousand U.S. dollars, one thousand dollars per defendant, either as cash or security bond, which the Court deems sufficient to cover any damages suffered by Defendants as a result of a wrongful restraint hereunder.

## IV. CONCLUSION

Based on the foregoing, the Court **GRANTS** Plaintiff Jie Qin's Motion for a Preliminary Injunction (ECF No. 19) as dictated above. Defendants that are subject to this Order may appear and move to dissolve or modify the Order on two days' notice to Plaintiff.

Counsel for all parties are hereby ordered to contact chambers directly once such an appearance and motion have been filed. Absent a defendant's appearance or motion, Plaintiff is to provide a status update to the Court in forty-five (45) days to apprise the Court of any progress in the case.

SIGNED this 7th day of January, 2022.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE